107 F.3d 870
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DeWayne KACZMAREK, et al., Plaintiffs-Appellants,
v.
Larry LONGSWORTH, et al., Defendants-Appellees.
 No. 96-3079.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1997.
 
 Before: KENNEDY, NELSON, and VAN GRAAFEILAND,* Circuit Judges.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 This is an action brought under 42 U.S.C. § 1983 against an Ohio sheriff and an Ohio probation officer for detaining a Michigan probationer in alleged violation of his constitutional rights. The district court entered summary judgment in favor of the defendants. Upon de novo review, we conclude that the record discloses no genuine issue of material fact and that each of the defendants is entitled to judgment as a matter of law. The summary judgment will be affirmed as to both defendants.
 
 
 2
 * Convicted in a Michigan state court on a larceny charge, plaintiff DeWayne Kaczmarek was sentenced to one year in jail and five years' probation. The probation was scheduled to end in June of 1994. Mr. Kaczmarek became a resident of Ohio in 1993, and the Ohio Adult Parole Authority assumed responsibility for his supervision pursuant to the Interstate Compact for the Supervision of Parolees and Probationers. The compact is codified at Ohio Rev.Code § 5149.17.
 
 
 3
 In January of 1994 Mr. Kaczmarek's brother went to a Parole Authority office in Wapakoneta, Ohio, and reported that Mr. Kaczmarek was exhibiting a sexual interest in the young daughter of a woman with whom he was living. The girl--a middle school student said to be 13 years old at the time--was interviewed the following month by investigators from the local Children's Services Bureau and the Wapakoneta Police Department. (The interviews were triggered by a report from a school official that the child was being abused by her mother's boyfriend.) The girl told the investigators of a long series of incidents in which she said Mr. Kaczmarek had touched her breasts, buttocks, and genital area in an inappropriate manner. Many of these contacts were said to have occurred in her bedroom at night.
 
 
 4
 Apprised of this information, defendant Dennis Tenwalde, a Parole Authority officer in Wapakoneta, directed defendant Larry Longsworth, the Sheriff of Auglaize County, Ohio, to arrest Mr. Kaczmarek for violation of the terms of his probation. The sheriff's department jailed Mr. Kaczmarek on March 2, 1994. On the same day, Officer Tenwalde signed a standard-form Ohio Adult Parole Authority order directing the sheriff to keep Kaczmarek in custody "until released by the undersigned."
 
 
 5
 On the following day, March 3, 1994, the Parole Authority gave Mr. Kaczmarek written notice of a hearing scheduled to be held at the jail on March 15, 1994. The purpose of the hearing was to determine whether probable cause existed to believe that Mr. Kaczmarek had committed probation violations by having illegal sexual contact with the girl.
 
 
 6
 Officer Tenwalde prepared a detailed interstate compact investigative report under date of March 9, 1994. The report concluded with a recommendation that the State of Michigan extradite Mr. Kaczmarek for a probation violation hearing.
 
 
 7
 Ohio's probable cause hearing went forward as scheduled on March 15, after Officer Tenwalde had interviewed the girl and confirmed that her story squared with what the investigators had learned. The girl testified at the hearing in the presence of Mr. Kaczmarek and his lawyer. After consideration of her testimony, the hearing examiner found that probable cause existed to believe that Mr. Kaczmarek had touched the child in a sexually inappropriate manner at various times over a seven month period ending February 28, 1994.
 
 
 8
 On March 21, 1994, Officer Tenwalde prepared a brief supplement to his earlier report. The purpose of the supplement was to notify Michigan of the result of the probable cause hearing and to advise that Mr. Kaczmarek would be held in custody "until further word is received from the State of Michigan."
 
 
 9
 Interstate compact reports such as those prepared by Officer Tenwalde would normally be forwarded through a chain of command without any direct communication between field officers in the two states. Officer Tenwalde testified that he was concerned, however, about the length of time it might take for his reports on Mr. Kaczmarek to work their way through the system. With the approval of his supervisor, Tenwalde said, he placed a telephone call on or about March 23, 1994, to the probation officer who had supervised Mr. Kaczmarek in Michigan.[1]
 
 
 10
 The Michigan probation officer, Donel Wimberly by name, was told that a young girl had made serious allegations against Mr. Kaczmarek; that Kaczmarek was in custody; and that criminal charges had not yet been brought against him. Officer Tenwalde arranged to have the Ohio Parole Authority reports transmitted to Officer Wimberly by facsimile, and Wimberly told Tenwalde that he would get back to him after talking to the sentencing judge.
 
 
 11
 Criminal charges of sexual imposition were filed against Mr. Kaczmarek in the Auglaize County Municipal Court on March 31, 1994. Mr. Kaczmarek appeared for arraignment the next day and entered a plea of not guilty. The court ordered an "own recognizance" bond and directed that a pretrial hearing be held at a later date.
 
 
 12
 On the same day that the criminal charges were filed in Ohio, and without being aware that the charges had been brought, Michigan Probation Officer Wimberly prepared an interstate case report to inform Officer Tenwalde that Michigan would not be extraditing Kaczmarek. The report--which Officer Tenwalde testified he did not receive until the first week in April--advised that Officer Wimberly was in receipt of the Ohio report dated March 21, 1994; that Michigan "will be unable to substantiate probation violation charges, based on the information provided by the State of Ohio;" that Michigan had received "no information ... relative to the arrest or pending arrest of probationer Kaczmarek;" and that "Michigan has not authorized that the defendant be detained on a probation violation charge." Officer Wimberly sent a teletype to the Auglaize County Sheriff's Department on April 1, 1994, stating that Michigan had not authorized a hold or detainer on Mr. Kaczmarek and was not seeking his extradition "at this time."
 
 
 13
 Officer Tenwalde found Officer Wimberly's March 31 report "a very confusing document." Although the report mentioned Tenwalde's report of March 21, 1994, it did not acknowledge receipt of the March 9 report in which a detailed description of the girl's allegations of sexual misconduct had been set forth. Absent any mention of March 9 report, the statements that Michigan would be unable to substantiate probable violation charges and would not be extraditing Mr. Kaczmarek made no sense to Officer Tenwalde. And although Officer Wimberly had said on the telephone that he would be talking to the Michigan judge because of the nature of the allegations against Mr. Kaczmarek, Wimberly's March 31 report said nothing about the judge at all.
 
 
 14
 Given the confusing nature of the report, Officer Tenwalde decided that he should not be talking to Officer Wimberly but to Gail Price, the head of Ohio's interstate compact office. Telephoning Ms. Price in Columbus on April 7, 1994, Officer Tenwalde briefed her on his conversation with Officer Wimberly and told her what Wimberly had said in his transmission of March 31. Ms. Price's response, as Officer Tenwalde testified at his deposition, was "THAT IS RIDICULOUS." Ms. Price told Officer Tenwalde that she would look into the matter and get back to him, but he did not recall her having done so.
 
 
 15
 On April 1, meanwhile, the Chief Corrections Officer at the Auglaize County Jail, Dan Garrison, called the Wapakoneta office of the Ohio Adult Parole Authority after receiving the teletype from Michigan. Mr. Garrison spoke to a Ms. Bornhorst at the Parole Authority office and asked her what action to take regarding Mr. Kaczmarek. Ms. Bornhorst promised to make inquiry, according to Mr. Garrison's affidavit. On April 7, the affidavit continues, the parole authority called Garrison back and "advised we were to continue to hold DeWayne Kaczmarek until told by the Adult Parole Authority to release him." A note made by Mr. Garrison at the time indicates that this advice was given on the authority of Ms. Price at the interstate compact office in Columbus.
 
 
 16
 Under date of April 25, 1994, Officer Tenwalde prepared a supplemental interstate report advising of his contact with Ms. Price and stating that he had not yet heard formally from the State of Michigan. The report noted that Mr. Kaczmarek had been charged with sexual imposition in violation of Ohio Rev.Code § 2907.06(A)(4); that a final pretrial had been set for May 4, 1994; and that a jury trial was scheduled for May 9. "[O]nce again," the report concluded, the writer was asking "whether the State of Michigan wishes us to continue our hold order and to arrange extradition procedures."
 
 
 17
 On May 9, 1994, Michigan Parole Officer Wimberly prepared an interstate case report that contained this paragraph:
 
 
 18
 "This case has been discussed at length with Berrien County [Michigan] Probation Administrator, David Dreese, who in turn, discussed this with sentencing judge, Ronald Taylor. The instructions are the same. A WARRANT WILL NOT BE FORTHCOMING. The state of Ohio is therefore instructed and informed that if probationer Kaczmarek is being held in the Auglaize County Jail pending a warrant from the State of Michigan, he should be released, as a WARRANT WILL NOT BE FORTHCOMING."
 
 
 19
 Officer Tenwalde was on vacation at this time, but on May 11, 1994, an Ohio Adult Parole Authority agent named Margaret Miller--presumably acting on the authority of Ms. Price--signed an order directing the sheriff to release Mr. Kaczmarek. The sheriff promptly did so. The sexual imposition charge was subsequently resolved by a plea bargain under which Mr. Kaczmarek pleaded guilty to the lesser offense of disorderly conduct.
 
 
 20
 In September of 1994 Mr. Kaczmarek filed his civil rights case against Sheriff Longsworth and Officer Tenwalde. Joining as a plaintiff was a woman who seems to have been the mother of the girl who said that Mr. Kaczmarek had been molesting her. The complaint alleged that the mother "has failed to enjoy the consortium of the plaintiff Kaczmarek." In addition to the loss of consortium claim, loss of companionship claims were asserted on behalf of two minor children, Davis Kaczmarek and Chance Kaczmarek. The plaintiffs sought compensatory and punitive damages totaling $2 million and an order vacating Mr. Kaczmarek's disorderly conduct conviction.
 
 
 21
 Following extensive discovery, the defendants filed separate motions for summary judgment. A magistrate judge recommended that Sheriff Longsworth's motion be granted and that Officer Tenwalde's be denied. The district judge accepted the former recommendation and rejected the latter, explaining his reasons in a memorandum opinion. Judgement was entered in favor of both defendants on December 27, 1995, and the plaintiffs then filed a timely notice of appeal.
 
 II
 
 22
 Plaintiff Kaczmarek tells us that he does not quarrel with his initial detention. He maintains, however, that it was a violation of his due process rights and an infliction of cruel and unusual punishment for the defendants to keep him in jail after April 1, 1994. April 1, it will be recalled, was the date of the teletype in which Michigan Probation Officer Wimberly advised the sheriff's department that Michigan had not authorized a hold or detainer on Mr. Kaczmarek and was not currently seeking his extradition.
 
 
 23
 We see no constitutional violation on the facts presented here. The hearing conducted by the Ohio Adult Parole Authority on March 15 had established, on the basis of apparently credible evidence, that there was probable cause to believe that Mr. Kaczmarek had repeatedly engaged in conduct constituting a serious violation of the terms of his probation. Mr. Kaczmarek concedes that it was not unconstitutional for the Ohio authorities to keep him in jail until the sheriff's department received the teletype on April 1, 1994, by which time criminal charges were pending against Mr. Kaczmarek in the Auglaize County Municipal Court. We are not persuaded that anything in the United States Constitution required the State of Ohio to treat the teletype as an instant "get out of jail" card for Mr. Kaczmarek.
 
 
 24
 The plaintiffs maintain that it was Michigan, not Ohio, that called the shots here. We are by no means sure that this is so. The Interstate Compact expressly provides that "[e]ach receiving state [Ohio, in this instance] will assume the duties of visitation of and supervision over probationers or parolees of any sending state [i.e. Michigan] and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees." Ohio Rev.Code § 5149.17(B) (emphasis supplied). There has been no showing that Mr. Kaczmarek was entitled to be released on April 1, 1994, under the standards set by Ohio for its own probationers and parolees.
 
 
 25
 State ex rel. Ohio Adult Parole Authority v. Coniglio, 82 Ohio App.3d 52, 610 N.E.2d 1196 (Tuscarawas 1993), on which the plaintiffs rely, is not directly in point. Coniglio held that an Ohio common pleas court could not grant bond to a Pennsylvania probationer who, while being supervised in Ohio, had been taken into custody by the Ohio Adult Parole Authority pursuant to a Pennsylvania "Hold/Detainer" filed with an Ohio sheriff. The holding of Coniglio rested on Ohio Rev.Code § 5149.17(C), a provision dealing solely with the "retaking" of a probationer by the sending state.
 
 
 26
 Section 5149.17(C) says in pertinent part that "[t]he decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state." Given that language, the Coniglio court stated that "[f]or purposes of determining appellee's status in the present case, we believe that the Ohio authorities should be considered as agents of Pennsylvania, the sending state. As such, the Ohio authorities are bound by the decision of Pennsylvania with respect to whether the apprehended probationer should be considered for release on bond and the courts of Ohio should recognize that fact." 82 Ohio App.3d at 55, 610 N.E.2d at 1198.
 
 
 27
 Section 5149.17(C) does not, by its terms, address the effect of a decision by the sending state not to retake a probationer--and Coniglio does not necessarily suggest that the Ohio authorities should be considered as agents of the sending state in deciding to continue to hold a probationer in custody. We need not resolve this issue, however, for we do not believe that either of the defendants in the case at bar committed any constitutional violation even if one or the other of them could appropriately be viewed as an "agent" of Michigan.
 
 
 28
 As to Officer Tenwalde, the signals he was getting from Michigan were "confusing." The report that Officer Tenwalde received from the Michigan probation officer during the first week in April made little sense, in light of the facts known to Tenwalde, and it was perfectly reasonable for him to ask Ms. Price, the head of Ohio's interstate compact office in Columbus, to clarify the situation. She undertook to do so, and Officer Tenwalde was entitled to assume that she would take appropriate action. It is immaterial for present purposes whether she acted reasonably or not; Ms. Price has not been named as a defendant in this case.
 
 
 29
 As to Sheriff Longsworth, he was required by statute to "execute every summons, order, or other process directed to him by a proper and lawful authority of this state...." Ohio Rev.Code § 311.08(A). The Ohio Adult Parole Authority was the proper and lawful authority to issue the order directing that Mr. Kaczmarek be held in custody until released by the Parole Authority's agent. Sheriff Longsworth's department promptly and properly consulted with the Parole Authority upon receipt of the April 1 teletype from Michigan--and as soon as the Parole Authority directed that Mr. Kaczmarek be released, Sheriff Longsworth's department released him. Nothing in the Interstate Compact or the United States Constitution required Sheriff Longsworth to do more than he did.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation
 
 
 [1]
 There is also evidence that the Michigan probation officer placed the first call, but the conflict is not material